# United States Court of Appeals
## For the First Circuit

No. 24-1126

KYLE KWOKA, as representative of the opt-in plaintiffs for
addressing the issues now on appeal; CAROLINA LOPEZ, as
representative of the opt-in plaintiffs for addressing the
issues now on appeal,

Plaintiffs, Appellants,

MAMADOU ALPHA BAH, individually and on behalf of all other
similarly situated individuals,

Plaintiff,

v.

ENTERPRISE RENT-A-CAR COMPANY OF BOSTON, LLC; ENTERPRISE
HOLDINGS, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Barron, Chief Judge,
Kayatta and Aframe, Circuit Judges.

Thomas Fowler, with whom Shannon Liss-Riordan, Samuel J.
Davis, and Lichten & Liss-Riordan, P.C. were on brief, for
appellants.
Philip J. Gordon, with whom Gordon Law Group, LLP was on
brief, for Massachusetts Employment Lawyers Association, amicus
curiae.

Jason C. Schwartz, with whom Jacob T. Spencer, Ryan C. Stewart, Amalia Reiss, Kelly Skowera, Gibson, Dunn & Crutcher LLP, Barry J. Miller, and Seyfarth Shaw LLP were on brief, for appellees.

_____

June 18, 2025

_____

**BARRON**, <u>**Chief Judge**</u>.  This interlocutory appeal turns on an important question about "representative" actions under the Fair Labor Standards Act ("FLSA"):  When, if ever, does a district court's "significant delay" in ruling on the named plaintiff's motion to issue notice of the action to potentially "similarly situated" employees require that the statute of limitations for their claims be tolled for the period of that delay?  We conclude that, even assuming that in some cases such a delay may warrant such tolling, there was no requirement to toll the claims here.  We thus affirm the judgment below, which decertified a conditionally certified class of "similarly situated" employees in this FLSA representative action and dismissed with prejudice as untimely the claims of those who had opted in to the action.

## I.

## A.

Mamadou Bah filed the action against Enterprise Holdings, Inc. ("EHI") and Enterprise Rent-A-Car Company of Boston, LLC ("Enterprise Boston") on December 21, 2017, in the United States District Court for the District of Massachusetts. He did so pursuant to § 216(b) of the FLSA,[1] which provides that an "action" for an FLSA violation

> may be maintained against any employer . . . in any Federal or State court

---

[1] Bah's complaint also alleged Massachusetts state law wage and hour claims on his own behalf against the defendants.

- 3 -

of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

Bah's complaint alleged that, in violation of the FLSA, Enterprise Boston and EHI failed to pay overtime wages prior to November 27, 2016, to assistant branch managers whom, like himself, the two companies jointly employed. As support for the FLSA claims, the complaint alleged as follows.

EHI is a parent holding company that owns subsidiaries nationwide. Enterprise Boston is a subsidiary of EHI that operates rental branches throughout Massachusetts. Bah worked at various Enterprise Boston locations between May 2014 and January 2017 and assumed the role of assistant branch manager in July 2016.

Prior to November 27, 2016, assistant branch manager positions were classified as "exempt" from overtime requirements of the FLSA and Massachusetts law. On November 9, 2016, however, Bah received a memorandum informing him that his position would be reclassified as non-exempt starting with the pay period beginning November 27, 2016. On December 2, 2016, Bah received the last paycheck that his suit alleged violated the FLSA by failing to include the requisite overtime pay.

**B.**

An FLSA cause of action accrues on the payday that an employer fails to pay lawful compensation. See 29 C.F.R. § 790.21(b) (2025). FLSA claims are subject to a two-year limitations period unless the alleged violation is willful, in which case the limitations period is three years. See 29 U.S.C. § 255(a).

Section 256 specifies how the statute of limitations operates in a representative action under the FLSA:

> In determining when an action is commenced for the purposes of section 255 of this title, an action . . . shall be considered to be commenced on the date when the complaint is filed; except that in the case of a collective or class action . . . it shall be considered to be commenced in the case of any individual claimant--
>      (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or
>      (b) if such written consent was not so filed or if his name did not so appear -- on the subsequent date on which such written consent is filed in the court in which the action was commenced.

Id. § 256.

**C.**

Under § 256, Bah's FLSA action is "considered to be commenced" for himself "on the date when the complaint is filed" because "he is specifically named as a party plaintiff in the

- 5 -

complaint." Id. § 256(a). But, "[u]nlike in traditional 'class actions' maintainable pursuant to Federal Rule of Civil Procedure 23, plaintiffs in FLSA representative actions must affirmatively 'opt in' to be part of the class and to be bound by any judgment." Myers v. Hertz Corp., 624 F.3d 537, 542 (2d Cir. 2010). So, the action commenced for the opt-ins only when they filed their written consent forms with the district court, see 29 U.S.C. § 256(b), and thereby became parties to the representative action themselves, see Waters v. Day & Zimmermann NPS, Inc., 23 F.4th 84, 89 (1st Cir. 2022).

To facilitate the opt-in process, Bah filed a "Motion for the Issuance of Notice Pursuant to § 216(b) of the FLSA" on the same day that he filed his complaint. The motion sought conditional certification of a class of "similarly situated" employees -- identified as including assistant branch managers who worked for the defendants during the relevant time. It requested that the District Court issue "an order allowing notice of this action to be distributed to other assistant branch managers who have worked for Enterprise across the country during the relevant period (three years ago until November 27, 2016) informing them of their right to opt in to this case pursuant to § 216(b) of the FLSA."

On January 5, 2018, the defendants and Bah jointly requested a 30-day extension for the defendants to answer Bah's

complaint. They also stipulated to tolling the statute of limitations "for all potential opt-in plaintiffs during this thirty-day extension period." The District Court granted the request five days later. Accordingly, absent additional tolling, the statute of limitations was set to expire as to all the individuals who were potential opt-ins to Bah's representative action on either January 1, 2019, or, insofar as the violation was willful, January 1, 2020.

## D.

On January 31, 2018, the defendants moved to stay briefing on Bah's motion for the issuance of notice. The defendants urged the District Court to first consider EHI's forthcoming motion to dismiss Bah's FLSA action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim insofar as the complaint named that company as a defendant.

The defendants explained that EHI's motion to dismiss would argue that "EHI is not an 'employer' for purposes of the [FLSA] of assistant branch managers who work for its subsidiaries." They further pointed out that, if EHI's motion to dismiss were granted, the class of those "similarly situated" to Bah would be limited to those employees who worked as assistant branch managers in the Boston subsidiary of EHI in which Bah himself had been employed. As a result, they contended, there would be no basis for providing notice of his action to any other individuals.

- 7 -

Bah opposed the stay motion on February 15, 2018. He argued that "[i]n an FLSA case, what should happen first is the issuance of notice." He also argued that, in the event the District Court were to grant the stay motion, the District Court should "toll the statute of limitations for potential opt-in plaintiffs until the Court rules on the notice motion" and permit the parties to conduct limited discovery in the interim on the dispositive issue concerning EHI's employer status that the defendants' motion to dismiss raised.

On March 1, 2018, the District Court granted the defendants' motion to stay briefing on Bah's motion for the issuance of notice. It determined that "issuance of a notice of the pendency of this action . . . should be deferred at least until EHI's motion to dismiss is decided because whether EHI remains a party is material to the scope and substance of any notice."

That fall, on September 18, 2018, the District Court dismissed all the claims against EHI under Federal Rule of Civil Procedure 12(b)(6) without prejudice, thereby mooting Bah's motion for the issuance of notice. It reasoned that the complaint "fail[ed] to plead adequately the facts supporting the plausible conclusion that [Bah] ha[d] an employment relationship with [EHI]." This was so, the District Court later explained, because Bah "had relied on a legally invalid integrated enterprise liability theory, rather than on the test articulated by the First

- 8 -

Circuit for joint employer status" in <u>Baystate Alternative Staffing, Inc.</u> v. <u>Herman</u>, 163 F.3d 668 (1st Cir. 1998).

**E.**

While Bah's claim on behalf of himself and "other similarly situated employees" against Enterprise Boston remained pending, Bah filed an amended complaint ("First Amended Complaint") on October 15, 2018. In it, he alleged additional facts in support of the FLSA claim on behalf of himself and "all similarly situated assistant branch managers" against both EHI and Enterprise Boston. Among other things, the First Amended Complaint newly alleged that the November 9, 2016 memorandum on the reclassification of assistant branch managers was sent by Dwayne Walker, who "is identified on his LinkedIn profile as being employed at Enterprise Holdings in Glencoe, Missouri, which is the location of Enterprise Holdings' headquarters."

A dispute thereafter ensued over the factual allegation concerning Dwayne Walker. In their motion to dismiss the First Amended Complaint, the defendants contended -- as they had done in a letter to plaintiff's counsel before filing the First Amended Complaint -- that Bah did not have a good-faith basis to allege that Walker was in fact an employee of EHI and that what the First Amended Complaint did allege about "the incomplete LinkedIn profile does not establish that Mr. Walker was an EHI employee."

At a hearing on the motion, the District Court expressed "concern[]" over whether Bah had a proper basis for including the allegations about Walker that were in dispute. The District Court referenced defense counsel's letter to plaintiff's counsel prior to the filing of the First Amended Complaint.

In response, on March 6, 2020 -- and so, after the limitations period had expired for all the members of the putative class -- Bah amended his complaint once more. The "Second Amended Complaint" contained the same allegations as the First Amended Complaint, save for two changes. First, the Second Amended Complaint omitted the disputed allegation concerning Walker. Second, it newly alleged that the list of frequently asked questions ("FAQ") accompanying the November 9, 2016 memorandum was "in a different font from the cover memorandum."

**F.**

EHI moved to dismiss the Second Amended Complaint on March 30, 2020. The company did so once again on the ground that it was not a joint employer with Enterprise Boston as to Bah -- and by extension, any of the putatively "similarly situated" employees.

On November 13, 2020, the District Court denied the motion to dismiss. It relied, at least in part, on the allegation that the FAQ was in a different font from the cover memorandum, explaining that "[i]t would be reasonable to infer that the

- 10 -

different fonts indicate that the FAQs, at least, were written by someone other than Walker," whom it inferred to be an employee of Enterprise Boston. The District Court explained that the different fonts, when viewed in combination with other features of the FAQ, "support[ed] an inference that EHI made the decision to reclassify assistant branch managers as non-exempt." (Emphasis added). The District Court did not at that time grant the motion for the issuance of notice.

On December 2, 2020, the defendants filed a motion for reconsideration of the District Court's denial of the motion to dismiss the Second Amended Complaint. After briefing and a hearing, the District Court denied that motion on September 2, 2021.

On the same day, the District Court ordered Bah to file a supplemental brief in support of the motion for the issuance of notice, in response to a joint statement by the parties that had proposed that the plaintiff file a supplemental brief in support of the motion for the issuance of notice to "brief the statute of limitations issue and the propriety of tolling." Bah filed the supplemental brief on October 4, 2021.

The defendants filed their opposition to the motion for issuance of notice on November 5, 2021. They opposed the motion partly on the ground that "it would be improper to certify a nationwide collective" because the court "[would] not have

- 11 -

personal jurisdiction over EHI with respect to any claims by non-Massachusetts FLSA opt-ins." Noting that this court was considering that same personal jurisdiction issue in Waters, 23 F.4th 84, the defendants urged the District Court, "at a minimum," to "stay [Bah's motion for the issuance of notice] until a decision in Waters is reached."

The District Court agreed with the defendants, over Bah's objection. It thus stayed the case on December 23, 2021, based on its concern that it might "lack personal jurisdiction over [EHI] with regard to [plaintiffs] not residing in Massachusetts." Our decision in Waters, 28 F.4th 84, came down on January 13, 2022. It resolved the District Court's concern regarding personal jurisdiction.

Thereafter, the District Court, on June 28, 2022, conditionally certified a class of potential plaintiffs and authorized issuance of notice to its members. The class was defined as "all individuals who worked as assistant branch managers at any Enterprise Rent-a-Car Branch in the United States, between December 21, 2014 (three years before the [original] Complaint was filed) and November 27, 2016 (the date that the assistant branch managers were reclassified as not exempt from receiving extra pay for working overtime)."

The District Court recognized, however, that, by that time, the statute of limitations had expired for all potential

opt-ins to Bah's suit. Nonetheless, the District Court concluded that it was proper for the notice to be issued because "[a]n opt-in plaintiff would not be barred from joining the collective if he or she prove[d] that equitable tolling of the statute of limitations applie[d]." The District Court thus issued an order stating that "Plaintiff shall, by July 26, 2022, issue by mail, e-mail, or text message the form of notice [approved in the Court's June 28, 2022 Order]."

Bah filed the first batch of opt-in consent forms from putative plaintiffs on August 12, 2022. Ultimately, 1,462 individuals submitted written consent forms to opt in to Bah's representative action. Of those, 1,192 opt-in plaintiffs submitted signed declarations that included the following identical language: "Prior to receiving the notice of my right to opt in to this case that was issued on July 26, 2022, I was not aware of the case, nor was I aware that I potentially had a claim for unpaid overtime against Enterprise. The only way that I became aware of my rights under the Federal [Fair] Labor Standards Act was by receiving the notice."

Six of the 1,192 opt-in plaintiffs submitted affidavits in addition to the template declarations. Of the six, four used their affidavits to explain why they had not pursued their claims earlier. One of those affidavits stated, "[b]ecause of extraordinary circumstances I was unable to bring this claim

- 13 -

before," while another stated, "[it] was difficult to speak up" about the alleged wage violations. A third affidavit stated, "I didn't file a claim before the [expiration of the statute of limitations] because I was under the assumption per our HR department and leadership at the time that we were base salary plus bonus employees." The remaining affidavit stated "I did not bring my claim before December 2018 or 2019 because I was unaware of how to question Enterprise-Rent-a-Car about the exemption status and classification. I also, was unaware of the overtime laws and how it correlated with exemption status."

**G.**

The opt-in plaintiffs "designated" Bah as "[their] agent to make decisions on [their] behalf concerning the litigation" in their opt-in consent forms. The District Court ordered the parties to identify two representative opt-in plaintiffs who had submitted only template declarations. It also ordered Bah to file a memorandum of law addressing "whether the two designated representatives' [d]eclarations justify equitable tolling and whether the statements in each [d]eclaration of the [six individuals who included additional language] justify equitable tolling."

The parties designated Kyle Kwoka and Carolina Lopez as the representative plaintiffs who had filed template declarations. Bah then filed a memorandum of law arguing that "equitable tolling

should be applied to the [FLSA] claims of all of the [o]pt-in plaintiffs."

To demonstrate an entitlement to equitable tolling under the established test set forth in Menominee Indian Tribe of Wisconsin v. United States, 577 U.S. 250, 255 (2016), the party seeking the tolling must prove: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." The Supreme Court of the United States has instructed that these two components are to be analyzed as "elements" and "not merely factors of indeterminate or commensurable weight." Id. at 256. In addition, we have identified five "factors" to consider "within the Supreme Court's two-part standard," one of which -- as relevant here -- is "an absence of prejudice to a party opponent." Neves v. Holder, 613 F.3d 30, 36 n.5 (1st Cir. 2010).

Bah argued to the District Court that "equitable tolling is appropriate where there have been delays in determining a motion for conditional certification under the FLSA, and therefore putative opt-in plaintiffs have not received timely notice of a case." He urged the District Court, in such circumstances, to "f[i]nd equitable tolling for opt-in classes as a whole rather than requiring each individual putative opt-in plaintiff to demonstrate individualized[,] extraordinary circumstances." Doing so, he argued, was necessary to "advance[] the broad remedial

- 15 -

purpose of the FLSA" and "preserv[e] the Congressional intent behind FLSA collective actions." He further contended that such tolling was required in this case because "the overtime claims . . . are based on nuanced interpretations of the law in a working environment specifically crafted by Defendants to evade scrutiny by the reasonable employee."

Bah also argued as follows. "Many elements of this case . . . would satisfy the 'extraordinary circumstances' and 'diligence' standards" under the case law. Specifically, "[c]ourts have regularly found that litigation delays may be an extraordinary circumstance justifying equitable tolling." As for the diligence element, it was satisfied because the complex nature of the FLSA violation at issue and the defendants' misleading conduct excused the opt-in plaintiffs from their "duty to have pursued remedies in federal court for these violations." In addition, Bah, as the named plaintiff, was reasonably diligent. Finally, the defendants would not be "[u]nfairly [h]armed" by tolling the claims of the opt-in plaintiffs because the defendants were "notified about this claim and the fact that Plaintiffs intended to pursue a collective action since the day Plaintiff's original complaint was filed."

On October 24, 2023, the District Court denied "Bah's request for equitable tolling . . . with prejudice" and "decertified" the conditionally certified class "[a]s there [were]

- 16 -

no putative plaintiffs with timely claims who ha[d] consented to opt-in."

The District Court first addressed "whether the facts represented in the declarations demonstrate[d] that the putative plaintiffs acted with diligence and faced extraordinary circumstances." The District Court concluded the answer was no. As to the template declarations, the District Court explained that they stated only that "the putative plaintiff was not aware of his or her potential claims or this case" and were "silent as to diligence." As to the six opt-in plaintiffs that had submitted additional affidavits, the District Court noted that Bah had conceded that those submissions were "not materially different than the [t]emplate [d]eclarations, and that if the [t]emplate [d]eclarations were insufficient, then so too were" those affidavits.

The District Court then addressed Bah's contention that it should grant equitable tolling to all of the opt-in plaintiffs on what the District Court called a "categorical" basis. Bah based the argument for such tolling on the remedial purposes behind the FLSA's representative action mechanism, the diligence of the named plaintiff, the "significant delay" in issuing notice, and circumstances unique to this case that made the FLSA violations at issue difficult to discover.

As to the remedial purposes of the FLSA, the District Court concluded that "Bah's proposed approach would make equitable tolling common and disrupt the balance struck by Congress in enacting the FLSA," given the "unusual" nature of "FLSA class actions" in that "the statute of limitations continues to run against each putative plaintiff until he or she opts in." As to Bah's contention that the named plaintiff's diligence sufficed to demonstrate the required diligence, the District Court concluded that "the diligence of the putative plaintiffs, not the named plaintiff and his counsel, is the proper focus of the equitable tolling inquiry" because it was "not persuaded that FLSA cases in general, or this case in particular, are so uniquely complex that individual plaintiffs are absolved of any responsibility for pursuing their claims diligently."

The District Court noted that courts enforce statutes of limitations in a range of contexts involving complicated regulatory frameworks. It also rejected Bah's contention that the defendants' misleading conduct prevented putative plaintiffs in this case from discovering their potential claims on the ground that none of the opt-ins had submitted evidence that "the defendants misled the putative plaintiffs or failed to post required notices."

Moreover, the District Court concluded that "even if Bah and his counsel's diligence was the focus for analysis," "Bah was

not reasonably diligent" because he "never filed a motion to toll the statute of limitations" before the statute of limitations expired. In addition, the District Court explained that "[a]s a result of Bah's pleading errors," "there was no operative compl[ai]nt for which to authorize notice until after the statute of limitations had passed."

The District Court also addressed Bah's contention that the "significant delay" in ruling on the motion for the issuance of notice constituted an "extraordinary circumstance" under traditional equitable tolling principles. It explained that even if litigation delay could constitute an extraordinary circumstance in some cases, this case was not such a case because much of the delay at issue was attributable to the normal course of deliberation and decision.

Finally, the District Court determined that the defendants would be prejudiced by granting Bah's motion for equitable tolling. It reasoned that "[t]he defendants could not have predicted who, if anyone, would ultimately consent to opt in to this case and try to collect relevant evidence for a nationwide class."

The District Court subsequently ordered the entry of partial final judgment, pursuant to Federal Rule of Civil Procedure 54(b). The order stated that "[t]he denial of plaintiff's request for equitable tolling and decertification of

the conditionally certified National Class . . . shall be ENTERED as a final judgment pursuant to Rule 54(b)."

## H.

A timely notice of appeal was filed by "Bah, on behalf of himself and all others similarly situated, [b]y his attorneys." (Emphasis added). The notice, titled "Opt-in Plaintiffs' Notice of Appeal," stated that "[t]his Notice of Appeal is submitted on behalf of all plaintiffs who have opted in to this matter and were dismissed by virtue of [the District Court's October 24, 2023 order]." It further stated that "the parties designated Opt-in Plaintiffs Kyle Kwoka and Carolina Lopez representatives for addressing the issues now on appeal." An exhibit attached to the notice listed "the Opt-in Plaintiffs who have been dismissed from this matter and are now appealing."

Bah, however, did not file any briefs on appeal. Instead, Kyle Kwoka and Carolina Lopez -- designating themselves as "representative[s] of the opt-in plaintiffs for addressing the issues now on appeal" and thus the "Plaintiffs-Appellants" -- filed the relevant briefs under their names. The briefs were signed by the same counsel that had filed the notice of appeal on behalf of Bah.

On October 18, 2024, we issued an order observing that "significant questions [exist] as to this court's appellate jurisdiction over this appeal," based on the well-established rule

that "a notice of appeal that is not signed either by the appealing party or by that party's attorney is a nullity." Ruiz Rivera v. Riley, 209 F.3d 24, 27 (1st Cir. 2000). Following our approach in Casanova v. Dubois, 289 F.3d 142, 145-46 (1st Cir. 2002), the order provided the opt-ins an opportunity to cure the defect in the notice. Thus, we directed the Clerk's Office to serve the law firm representing the opt-in plaintiffs with a copy of the notice of appeal, with instructions for counsel to sign the notice "in their capacity as the counsel for any opt-in plaintiff who wishes to participate in this appeal," and to return the signed notice to this court. (Emphasis added).

On October 29, 2024, counsel for the opt-in plaintiffs submitted a revised notice of appeal. The notice was submitted by "Kyle Kwoka, Carolina Lopez, and all Opt-in Plaintiffs listed in Exhibit A to this Notice of Appeal, [b]y their attorneys." (Emphasis added).

On November 6, 2024, this court entered an order noting that "the question as to which plaintiffs are to be treated as parties to this appeal ha[d] been resolved." This court then also ordered supplemental briefing on the following question: "Is the District Court's order here a final, appealable decision as to the opt-in plaintiffs, even without certification under § 1292(b)?" See Ultra-Precision Mfg. Ltd. v. Ford Motor Co., 338 F.3d 1353, 1359 (Fed. Cir. 2003) (noting that a district court's order under

Rule 54(b) must in and of itself be a final, appealable decision). The parties submitted supplemental briefs addressing this issue, in which they agreed that the District Court's order dismissing the opt-in plaintiffs' FLSA claims constituted a final judgment at least as to each individual opt-in's ability to participate in this collective action. We conclude that the parties are correct, given that the District Court denied Bah's request for equitable tolling "with prejudice."

## II.

Our review of a district court's refusal to apply equitable tolling is for abuse of discretion. Rivera-Díaz v. Humana Ins. Co. of P.R., 748 F.3d 387, 390 (1st Cir. 2014). "[A]bstract questions of law are reviewed de novo, findings of raw fact are reviewed for clear error, and judgment calls receive a classically deferential reception." Holmes v. Spencer, 685 F.3d 51, 62 (1st Cir. 2012) (quoting Riva v. Ficco, 615 F.3d 35, 40 (1st Cir. 2010)).

## III.

The appellants argue that the District Court abused its discretion in denying them tolling for the period between (at the latest) the defendants' motion to stay briefing on Bah's motion for the issuance of notice and the District Court's order granting the motion. They do so in part by contending that they are entitled to the requested tolling (which would suffice to render all their

claims timely) on an "across-the-board" or "categorical[]" basis, such that they need not make individualized showings about why each of them was unable to opt in to Bah's action before the limitations period had run on -- at the latest -- January 1, 2020. Because this categorical ground for tolling is the broadest one that the appellants assert, we begin with it.

Notably, nothing in the FLSA itself references tolling at all, let alone tolling of this categorical sort. Thus, ordinarily, we would presume that the FLSA merely allows for tolling in accord with "background" equitable tolling principles. See Young v. United States, 535 U.S. 43, 49-50 (2002) (citing Irwin v. Dep't of Veterans Affs., 498 U.S. 89, 95 (1990)). And, as set forth in Menominee, those background principles suggest that tolling may be obtained only for a claimant who, individually, demonstrates an "extraordinary circumstance" and his own reasonable diligence. See 577 U.S. at 255.

As a result, in contending that they are entitled to "categorical" or "across-the-board" tolling, the appellants are necessarily challenging the District Court's refusal to craft an unconventional tolling rule. But, even if we were to assume for the appellants' benefit that such an unconventional rule could apply to FLSA collective actions, we conclude that the District Court did not abuse its discretion in failing to apply it here.

In advancing their argument for categorical tolling, the appellants contend that, "under the unique circumstances of this case," "failing to grant tolling [for the period in question] to all opt-in plaintiffs would undermine the FLSA's remedial purpose and the functioning of its collective action mechanism." The "unique circumstances" that the appellants appear to have in mind are threefold: (1) the "significant delay" in the District Court's ruling on Bah's motion to notify the putative class of his representative action; (2) the assertedly non-obvious nature of the FLSA violation at issue here; and (3) the defendants' alleged concealment of that violation.

Indeed, the appellants argue that, given these "unique circumstances," the District Court "got it backwards" in concluding that the categorical tolling that they seek would "disrupt the balance struck by Congress in enacting the FLSA." They contend that, when taken together, these circumstances show that allowing for such tolling would accord with that balance. Accordingly, they contend that it was an abuse of discretion for the District Court to deny them the categorical tolling they sought for the period of the "significant delay."

As to the second circumstance, however, we have held, even in the context of other statutes with important remedial ends, that plaintiffs alleging such a claim are not entitled to equitable

tolling based on "excusable ignorance" as long as they possessed "actual knowledge." Kale v. Combined Ins. Co. of Am., 861 F.2d 746, 753 (1st Cir. 1988) (Age Discrimination in Employee Act). And we have defined that knowledge as "general[] aware[ness] of the fact that there is a statute outlawing [the defendants' actions] and providing relief therefor." Id.

In addition, as to the third circumstance, we have held in other statutory contexts, when a plaintiff seeks tolling based on a defendant's alleged concealment of the violation that grounds the claim at issue, that the concealment may not be presumed to have impeded the plaintiff's ability to file the statutory claim on time. Thus, we have required the plaintiff to show that the concealment was in fact the cause of their untimeliness. See id. at 753 (holding that "an initial case for equitable tolling has been made" if "the employee has no knowledge of his rights and his ignorance is due to misleading conduct by the defendant"); English v. Pabst Brewing Co., 828 F.2d 1047, 1049 (4th Cir. 1987) ("To invoke equitable tolling, the plaintiff must . . . show that the defendant attempted to mislead him and that the plaintiff reasonably relied on the misrepresentation by neglecting to file a timely charge.").

In consequence, the appellants must explain why a district court's "delay" in ordering the issuance of notice, when "significant," warrants the categorical tolling that they seek

whenever the alleged FLSA violation is hard to decipher or has been concealed, even though such tolling would not be warranted absent the delay. The closest that the appellants come to setting forth such an explanation is when they make their broader argument that the period of significant delay is an "extraordinary circumstance" that "on its own" warrants equitable tolling as to all of them on a categorical basis. (Emphasis added). We thus now attend to that piece of their argument.

**B.**

To set the stage for understanding the appellants' delay-based argument for categorical tolling, it helps to understand a bit more about the relevant legal landscape concerning the process for notifying potential opt-in plaintiffs in a collective or representative action under the FLSA. We thus start there before circling back to the contentions that the appellants make about why, given the importance of providing such notice, a district court's significant delay in authorizing the provision of the notice warrants categorical tolling for the period of that delay.

**1.**

Section § 216(b) is silent as to the mechanism for providing notice to potential plaintiffs in an FLSA representative action. See 29 U.S.C. § 216(b); Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 168, 172 (1989). That said, a named

plaintiff who chooses to provide the notice on his own runs the risk that the defendant may challenge the substance of that notice, thereby generating a dispute that the district court must adjudicate. See Hoffmann, 493 U.S. at 171-72. As a result, the named plaintiff has an interest in having the notice pre-authorized by the district court. And the named plaintiff often has an interest in having the district court authorize the issuance of the notice well before any ultimate determination has been made about whether the persons alleged to be "similarly situated" to the named plaintiff are in fact so situated.

The Supreme Court has agreed that a district court may authorize the issuance of notice to a putative class in a representative action under the Age Discrimination in Employment Act ("ADEA"), which "incorporates [the] enforcement provisions of the [FLSA]," including the representative action mechanism that is set forth in § 216(b) of the FLSA. Id. at 167. The Court noted that by "monitoring preparation and distribution of the notice," as opposed to "waiting passively for objections about the manner in which the consents were obtained," the trial court could "settl[e] disputes about the content of the notice before it is distributed" and thereby "avoid the need to cancel consents obtained in an improper manner." Id. at 172.

The Court has prescribed no timetable, however, as to when such notice must be authorized. Rather, it has explained

that "[b]ecause trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time." Id. at 171.

District courts around the country have followed this guidance in managing representative actions brought pursuant to § 216(b) of the FLSA. Based on these courts' practices, we have observed that district courts have developed a "'loose consensus' regarding conditional certification procedures," which "entail[] a 'lenient' review of the pleadings, declarations, or other limited evidence, to assess whether the 'proposed members of a collective are similar enough to receive notice of the pending action.'" Waters, 23 F.4th at 89 (citations omitted) (first quoting Campbell v. City of Los Angeles, 903 F.3d 1090, 1108 (9th Cir. 2018); then quoting id. at 1109; and then quoting Swales v. KLLM Transp. Servs., L.L.C., 985 F.3d 430, 436 (5th Cir. 2021)).

Like the Supreme Court, however, we have not held that a district court must authorize notice at such an early stage. Nor have we identified the circumstances in which a district court might be deemed to have abused its discretion in failing to authorize it at an early stage of the proceedings.

**2.**

Despite the discretion that a district court plainly has when it comes to authorizing notice before a class of similarly situated opt-ins has been certified, the appellants contend that a district court's "significant delay" in granting a named plaintiff's motion at the time of the complaint's filing for the authorization of the issuance of that notice warrants categorical tolling. But, even if we were to conclude that in some cases that such a delay would warrant categorical tolling, we do not see how we could conclude that is so without regard to the reasons for that delay.

The FLSA's provision for representative actions does not impliedly suggest that an opt-in plaintiff has any right to participate in the named plaintiff's action before the named plaintiff has at least filed a complaint that does plausibly allege facts that can support the certification of the putative class. Nor does anything in the FLSA require a district court to rule on a motion for the issuance of notice to the putative class before resolving potential concerns about the scope of the class at that necessarily preliminary stage of the litigation.

Moreover, the district court cases relied on by the appellants for their proposed tolling rule do not suggest that the length of the delay -- no matter the reason for it -- in and of

itself warrants tolling.[2]  Indeed, those cases had no reason to so hold, as they did not confront a situation in which, as the District Court concluded was the case here, the named plaintiff failed to file a complaint that supported the purported class until after the statute of limitations had passed as to all the opt-ins.[3]

Our conclusion that there is no basis for a categorical tolling rule that is based on a significant delay without regard

---

[2]  Those cases are Schilling v. Schmidt Baking Co., No. TDC-16-2498, 2018 WL 3520432, at *7 (D. Md. July 20, 2018); Yahraes v. Restaurant Associates Events Corp., No. 10-CV-935, 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011); Depalma v. Scotts Co., No. 13-7740, 2017 WL 1243134, at *6 (D.N.J. Jan. 20, 2017); Viriri v. White Plains Hospital Medical Center, 320 F.R.D. 344, 355-56 (S.D.N.Y. 2017); Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 171 (S.D.N.Y. 2014); Davis v. Flare Ignitors & Rentals, Inc., No. SA-11-CA-00450, 2012 WL 12539328, at *2 (W.D. Tex. Mar. 19, 2012); Shidler v. Alarm Security Group, LLC, 919 F. Supp. 2d 827, 831 (S.D. Tex. 2012); Antonio-Morales v. Bimbo's Best Produce, Inc., No. Civ.A.8:5105, 2009 WL 1591172, at *1 (E.D. La. Apr. 20, 2009); Duncan v. Magna Seating of America, Inc., No. 22-12700, 2024 WL 1049467, at *3 (E.D. Mich. Mar. 11, 2024); Rice v. Walbridge Aldinger LLC, No. 22-11790, 2023 WL 8411537, at *3 (E.D. Mich. Aug. 11, 2023); Braun v. Coulter Ventures, LLC, Nos. 19-cv-5050, 20-cv-3052, 2022 WL 798358, at *3 (S.D. Ohio Mar. 16, 2022); Strauch v. Computer Sciences Corp., No. 14-cv-956, 2020 WL 4371816, at *4 n.2 (D. Conn. July 29, 2020); Pineda v. Skinner Services, Inc., No. 16-12217, 2020 WL 5775160, at *11 (D. Mass. Sept. 28, 2020); and Hart v. Government Employees Insurance Co., 609 F. Supp. 3d 323, 331 (M.D. Pa. 2022).
[3]  The district court in Jones v. Giant Eagle, Inc., Nos. 18cv282, 18cv1534, 2019 WL 4743687 (W.D. Pa. Sept. 30, 2019), did hold that it was "unwilling to parse through each event in the record in search of fault and blame for the inordinate delay" because the "relevant inquiry" was whether the opt-in plaintiffs, not the named plaintiffs, were at fault for the delay in the notice process. Id. at *6.  We address below the appellants' alternative contention that, even if Bah was at fault for the delay, their own diligence entitles them to tolling.  See infra Part IV.B.

- 30 -

to the reasons for that delay also accords with the concurring opinion from another circuit on which the appellants rely, Clark v. A&L Homecare & Training Ctr., LLC, 68 F.4th 1003, 1015 (6th Cir. 2023) (Bush, J., concurring). That concurring opinion did suggest that a categorical tolling rule tied to a "delay" in a district court ordering the issuance of notice to potential opt-ins might be "appropriate" in an FLSA collective action. Id. It explained, however, that the source of the concern that such a tolling rule would address was "delays inherent" in the conditional certification process, in light of the court's decision in that case to "heighten[] the bar for determining whether potential plaintiffs are 'similarly situated' with party plaintiffs." Id. at 1014 (citation omitted). Thus, the concurring opinion observed that "[w]hen the facts indicate delay beyond the movant's control, many courts find equitable tolling to be an appropriate remedy." Id. (emphasis added) (quoting Betts v. Cent. Ohio Gaming Ventures, LLC, 351 F. Supp. 3d 1072, 1077 (S.D. Ohio 2019)).

Thus, even if we were to assume that categorical tolling could be available in FLSA collective actions, we conclude that a district court does not abuse its discretion in denying such tolling just because there is a significant gap in time between when the named plaintiff moves to have notice authorized and when it is authorized. Thus, we must reject the appellants' contention

that a "significant delay" -- on its own -- warrants categorical tolling for the period of that delay.

Moreover, in this case the District Court determined that the delay in issuing the notice until after the limitations period had run was not, to quote the concurring opinion on which the appellants rely, "beyond the movant['s] control." Id. at 1015. Rather, the District Court determined that its decision to stay briefing on the motion for the issuance of notice until after the latest time the limitations period could have expired -- and so past January 1, 2020 -- was attributable to defects in the named plaintiff's own pleading of the facts necessary to state a claim on behalf of the potential opt-ins. The appellants have not shown that the District Court abused its discretion in so concluding.

In opposing EHI's first motion to dismiss, Bah argued that his complaint sufficiently alleged EHI as a joint employer under the "integrated enterprise theory."[4] But Bah provided scant support for the District Court adopting a theory for determining joint employer liability under the FLSA that this court had not

---

[4] Bah also argued below that his complaint sufficiently alleged EHI as a joint employer under Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668 (1st Cir. 1998). On appeal, however, the appellants do not dispute that Bah's complaint was insufficient to plead EHI as a joint employer under the Baystate test. Instead, they only contend that his complaint pleaded sufficient allegations to satisfy the integrated enterprise theory of liability, which they contend is a "more than plausible" theory of employer liability.

adopted and that two circuits had explicitly repudiated.[5]  In addition, rather than seeking to appeal the District Court's order of dismissal on these grounds, Bah amended the complaint to abandon the theory in question.

On March 16, 2020, Bah did file a complaint thereafter -- the Second Amended Complaint.  The District Court determined it properly pleaded facts that set forth a claim against EHI on behalf of himself and "similarly situated" employees.  But, because the limitations period had already run on all the claims of the opt-ins by that time, that complaint cannot provide support for the tolling that the appellants seek.

True, in the interim before the statute of limitations had run, Bah filed the First Amended Complaint.  It contained new

---

[5] See Chao v. A-One Med. Servs., Inc., 346 F.3d 908, 917 (9th Cir. 2003); Patel v. Wargo, 803 F.2d 632, 637 (11th Cir. 1986). Bah did cite to two district court cases in support of his contention that the integrated enterprise test may be used to determine joint employer liability in the FLSA. See Anderson v. Theriault Tree Harvesting, Inc., No. 08-330-B-W, 2010 WL 323530 (D. Me. Jan. 20, 2010); Joyce v. Upper Crust, LLC, No. 10-12204, 2012 WL 3028459 (D. Mass. July 25, 2012).  But neither case provided much support.  While Anderson did apply the integrated enterprise theory in determining joint employer liability under the FLSA, it did so only because neither party disputed its applicability.  Anderson, 2010 WL 323530, at *9.  And while Joyce did state that the defendants in that case were "so integrated with one another that JJB is liable for the conduct as a joint employer," the only legal authority it cited in support of its finding of joint employer liability was Baystate.  Joyce, 2012 WL 3028459 at *8.

allegations that were made to make up for the deficiencies that the District Court found in the initial complaint.

Notably, however, the defendants moved to dismiss the First Amended Complaint precisely because of concerns that they had identified with the new allegations concerning Dwayne Walker, the person alleged to have sent the November 9, 2016 memorandum announcing the reclassification of assistant managers. And, in opposing the defendants' motion to dismiss this First Amended Complaint, Bah did not argue that the First Amended Complaint set forth allegations sufficient to plead a claim against EHI as a joint employer independent of the new and disputed allegations concerning Walker. Instead, Bah repeated the disputed allegation in his opposition to the motion to dismiss, without responding to the defendants' contentions about the problems with sustaining the claims against EHI based on the allegations about Walker.

As a result, as of that point in the proceedings, Bah had failed to make any argument to the District Court that the First Amended Complaint provided a basis for the claims against EHI as a joint employer independent of the disputed factual allegation. And, rather than making any such argument based on that complaint thereafter, Bah instead merely requested leave to amend his complaint once more. He did so, we add, solely for the purpose of revising the relevant paragraphs to remove the disputed allegation about Walker and to replace it with new allegations on

which the District Court relied in denying the defendants' motion to dismiss the Second Amended Complaint. Yet Bah filed that request only on February 13, 2020, which was <u>after</u> the limitations period already had run on the claims of the opt-ins.

Furthermore, as the District Court noted, Bah never requested to toll the statute of limitations as a result of the "delay" resulting from the First Amended Complaint. The appellants are right that Bah requested that the District Court "toll the statute of limitations for potential opt-in plaintiffs until the Court rules on the notice motion" when he opposed the defendants' motion to stay consideration of his motion for the issuance of notice. But, there, Bah was contending that tolling should begin in light of the delay that would result if the District Court decided to grant the stay in order to first consider the defendants' forthcoming motion to dismiss the initial complaint. After the District Court decided that motion in the defendants' favor, and when additional delay resulted from adjudication of the defendants' motion to dismiss the First Amended Complaint, Bah did not separately request tolling based on the "delay" in addressing the motion to dismiss the First Amended Complaint.

For these reasons, we see no basis for second-guessing the judgment of the District Court that the delay was a product of the manner in which Bah pleaded and prosecuted his First Amended Complaint. Accordingly, we do not see how the District Court

abused its discretion in determining that any "delay" in issuing notice in this case was not a "delay" that, to borrow once more from the concurring opinion of Judge Bush on which the appellants partly rely, was "inherent" in the certification process. Clark, 68 F.4th at 1014 (Bush, J., concurring) (citation omitted). Rather, we conclude that the District Court reasonably determined that it was not a "delay beyond the movant's control." Id. at 1015 (quoting Betts, 351 F. Supp. 3d at 1077).

## IV.

There remain the appellants' arguments for a more conventional form of tolling in this case. Here, the appellants accept that a plaintiff must make an individualized showing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in [the] way" of his timely filing. Pineda v. Whitaker, 908 F.3d 836, 841 (1st Cir. 2018) (quoting Xue Su Wang v. Holder, 750 F.3d 87, 90 (1st Cir. 2014)). The appellants contend, however, that the District Court abused its discretion in concluding that the appellants have not made such a showing. But, largely for the reasons just given, we are not persuaded.

## A.

The District Court anchored its conclusion that Bah was not reasonably diligent, at least in part, on its finding that "[a]s a result of Bah's pleading errors, there was no operative

compl[ai]nt for which to authorize notice until after the statute of limitations had passed."  In defending Bah's diligence, the appellants first contend that these "pleading errors" were in fact not errors at all.  But, for reasons explained above, we see no reason to second-guess the judgment of the District Court that the delay in issuing notice was a result of Bah's failure to plead an FLSA violation against EHI until the Second Amended Complaint and that, as a result, Bah failed to demonstrate the requisite diligence.

The appellants do contend, as a fallback, that, even if Bah's pleadings were defective, that would not undermine his diligence because "tolling has been allowed where the claimant actively pursued a timely yet defective pleading." (Quoting Wilson v. U.S. Gov't, 23 F.3d 559, 561 (1st Cir. 1994)).  We are not persuaded.

In Irwin, the Supreme Court did note that a claimant's "filing a defective pleading during the statutory period" can be a sufficient basis for equitable tolling.  498 U.S. at 96.  Irwin cited, however, to three cases for that proposition.  Id. at 96 n.3 (citing Burnett v. N.Y. Cent. R.R. Co., 380 U.S. 424 (1965) (plaintiff timely filed a complaint in the wrong venue); Herb v. Pitcairn, 325 U.S. 77 (1945) (same); and Am. Pipe, 414 U.S. at 543 (class action complaint failed the numerosity requirement of Federal Rule of Civil Procedure 23(a)(1))).  In each, the claimant

- 37 -

had stated a valid claim in a timely manner and had either filed it in the wrong venue or filed a class action that failed for reasons relating to whether a valid class had been pleaded.

Here, by contrast, the defects the District Court identified concerned the timeliness of plausibly alleging the claim. The defects did not concern timely filing a valid claim in the wrong forum or as a class action without satisfying the requirements for securing class certification. The defects here therefore do not merely concern a "time-consuming and justice-defeating technicalit[y]." Burnett, 380 U.S. at 430 (quoting Goldlawr, Inc. v. Heiman, 369 U.S. 463, 467 (1962)). Nor do any of the cases cited by the appellants in support of their contrary contention persuade us otherwise.

The appellants first cite to Wilson, 23 F.3d 559. But that case, if anything, cuts against their position. It affirmed the denial of equitable tolling on the ground that the plaintiff failed to amend the complaint to include the proper defendant until after the statute of limitations had expired. Id. at 561-62.

The appellants' reliance on Mitchell v. City of San Diego, No. 17-cv-02014, 2018 WL 3729282 (S.D. Cal. Aug. 6, 2018) is also unavailing. That case did not involve a defective complaint. Id. at *5.

Finally, the appellants cite to Moreno v. United States, 88 Fed. Cl. 266, 282 (2009). But that case -- much like Burnett,

380 U.S. 424, and Herb, 325 U.S. 77 -- involved a complaint filed in the wrong court.

We note, too, that the fact that neither of Bah's "pleading errors" concerned his claim against Enterprise Boston is of no moment. The appellants have chosen to tie their argument for equitable tolling to the District Court's delay in ordering the issuance of notice. The reason is that in Bah's "Motion for the Issuance of Notice Pursuant to § 216(b) of the FLSA" Bah asked for "an order allowing notice of this action to be distributed to other assistant branch managers who have worked for Enterprise across the country during the relevant period." (Emphasis added).

Thus, Bah's request for nationwide notice was necessarily predicated on his claim against EHI -- the only nationwide employer named in the suit. Indeed, the District Court denied Bah's motion for the issuance of notice as moot when it granted EHI's motion to dismiss Bah's claims against it. Accordingly, even if Bah demonstrated the requisite diligence in pursuing his claims against Enterprise Boston, that diligence cannot be a basis for tolling the statute of limitations as to the appellants based on the delay in issuing the notice, as Bah never sought to have notice issued separately as to potential opt-ins to claims alleged against Enterprise Boston alone.

For all these reasons, we do not see how the pleadings in this case contain a kind of defect that can provide a basis for

equitable tolling back to the time that the defective pleading was filed. We thus conclude that the District Court did not abuse its discretion in finding that Bah did not demonstrate the requisite diligence.

**B.**

The appellants separately contend that tolling was required because they each demonstrated the requisite diligence by promptly opting into the collective action upon receiving notice. That is so, the appellants assert, because courts "must focus primarily on what opt-in plaintiffs do after receiving notice of a collective action." But the appellants rest this contention on the same arguments -- which they advanced in support of their categorical claim for tolling -- that "denying tolling to opt-in plaintiffs based on their failure to pursue claims individually is inconsistent with the structure and purpose of the FLSA" and that "[t]his is not a case where the FLSA violation was clear on its face and would have been readily apparently to the employees who claim their rights were violated."

The appellants, however, do not explain why the non-obvious nature of the FLSA claim at issue here excuses them from the obligation to have demonstrated the requisite diligence, given that they point to nothing in the record to show that they were not "generally aware of the fact that there is a statute outlawing [the defendants' actions] and providing relief

therefor." Kale, 861 F.2d at 753. Nor do the appellants identify any basis in the record to second-guess the District Court's conclusion that neither the template declarations nor the individualized affidavits "indicate that the defendants misled the putative plaintiffs."[6] And, finally, we do not see how the remedial purposes of the FLSA provide a basis for tolling here based on the District Court's delay in issuing the notice that Bah requested, given what the record shows about Bah's own role in causing that delay. We thus see no basis for concluding that the District Court abused its discretion in finding that the appellants (as the opt-in plaintiffs) were not diligent.

**V.**

For the reasons discussed above, we affirm the District Court's denial of named Plaintiff Bah's request to toll the FLSA's statute of limitations as to every appellant and its subsequent dismissal of the appellants' FLSA claims against defendants.

---

[6] The appellants primarily rely on the November 9, 2016 reclassification memorandum to contend that the defendants "affirmatively misled [o]pt-in plaintiffs." But the appellants do not identify any basis in the record to conclude that the opt-in plaintiffs held off on filing their claims because of the memorandum.